UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                              :
DARELL ANDRE FULLER,          :
                              :
          Plaintiff,          :   Civ. No. 12-7025 (NLH)
                              :
     v.                       :   OPINION
                              :
FCI MANCHESTER HEALTH         :
     SERVICE, et al.,         :
                              :
          Defendants.         :
_____:
```

APPEARANCES:

Darell Andre Fuller
1201 Cedar Lane Road
Apt #A-43
Greenville, SC 29617
     Plaintiff, pro se

Elizabeth Ann Pascal
Office of the United States Attorney
401 Market St.
P.O. Box 2098
Camden, NJ 08101
     Counsel for Defendants

HILLMAN, District Judge

This matter is before the Court upon a motion by Defendants seeking dismissal of certain defendants for lack of jurisdiction. (ECF No. 39).  Plaintiff has not filed an opposition.  For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

I.   PROCEDURAL HISTORY

On or about June 20, 2012, Plaintiff Darell Andre Fuller submitted a complaint pursuant to Bivens v. Six Unknown Fed.

Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), alleging that he received inadequate medical care for injuries to his wrist and knee while incarcerated at six different federal correctional institutions. (ECF No. 1).

On June 20, 2012, the United States District Court for the Eastern District of Pennsylvania granted Plaintiff's application to proceed in forma pauperis and issued an Order to Answer. (ECF No. 2).  On October 10, 2012, the Honorable Michael M. Baylson determined that venue was not proper in the Eastern District of Pennsylvania because none of the institutions identified in Plaintiff's Complaint were located in the Eastern District of Pennsylvania. See 28 U.S.C. § 1391(b)(2).  Because the most recent events giving rise to Plaintiff's claims occurred at the Federal Correctional Institution ("FCI") in Fairton, New Jersey, Judge Baylson ordered that the case be transferred from the Eastern District of Pennsylvania to the District of New Jersey. (ECF No. 9).

In light of the previously issued order to answer, this Court issued summons and directed Defendants to file a responsive pleading on December 3, 2012. (ECF No. 11).  On April 1, 2013, the Court denied Plaintiff's Motion to Appoint Pro Bono Counsel. (ECF No. 16).  Plaintiff, who has been released from prison since the filing of this Complaint, filed another application to proceed in forma pauperis (ECF No. 26), and on

December 8, 2014, Defendants filed a Motion to Dismiss and for
Summary Judgment (ECF No. 32).  In an Order dated August 24,
2015, this Court granted Plaintiff's request to proceed in forma
pauperis; and denied without prejudice Plaintiff's request for
pro bono counsel. (ECF No. 35).  The Court also dismissed
Defendants' Motion to Dismiss and for Summary Judgment as
procedurally improper, and informed Defendants that they could
refile their motions a separate, procedurally appropriate
filings. (ECF No. 35).  On September 30, 2015, Defendants filed
a new motion seeking partial dismissal of the Complaint for lack
of jurisdiction. (ECF No. 39).  To date, Plaintiff has not filed
a response.

## II.  DISCUSSION

### A. Allegations of the Complaint

In his Complaint, Plaintiff asserts that the events which
give rise to his claims occurred at "FCI Manchester, FCI
Edgefield, FCI Williamsburg, FCI Jesup, FCI Bennettsville, [and]
FCI Fairton." (Compl. 3, ECF No. 3).  Specifically, Plaintiff
explains that in 2002, while incarcerated at FCI Manchester, he
sustained an injury to his right knee for which he sought
treatment from health services.  Plaintiff states that his knee
was inspected by the physician's assistant ("PA") on duty who
instructed Plaintiff to keep ice on it.  Sometime thereafter,
Plaintiff states that he requested to have an MRI done because

3

he had heard the knee pop and it was still causing him chronic pain. (Compl. 11, ECF No. 3).  Plaintiff states that he was "going back and forth with medical staff and the clinic director" when he was transferred to FCI Edgefield in 2002. (Id.).

At FCI Edgefield, Plaintiff states that he spoke with the clinic director regarding his pain in the right knee.  He further asserts that he was denied the use of a special knee brace and, as a result, experienced unnecessary pain and suffering.  Plaintiff states that an orthopedic specialist ordered an MRI which reported two tears in his right meniscus. (Id.).  Plaintiff complained about chronic pain and wanted to undergo surgery to repair the damaged knee.  However, Plaintiff was transferred to FCI Williamsburg in 2005 and began the process anew.

At FCI Williamsburg, Plaintiff was given a "sleeve knee brace" to wear on his right knee. (Id.).  Plaintiff states that when he explained to the clinic director at FCI Williamsburg about his previous MRIs and his desired treatment, the doctor refused to listen.  Accordingly, Plaintiff states that he started the grievance process in 2007. (Compl. 12, ECF No. 3). In response to the grievance, the clinic doctor at FCI Williamsburg reported that Plaintiff did not exhibit any tears or problems with his right knee.  Plaintiff asserts that this

4

diagnosis was given without the clinic director reviewing the MRI report in Plaintiff's medical file.  Plaintiff states that the clinic director changed Plaintiff's care level from "care level one to care level two to transfer Plaintiff to FCI Jesup in 2007." (Id.).

At FCI Jesup, Plaintiff states he started the medical process over again by going to sick call and the chronic care clinic to request treatment for his knee.  Plaintiff states that he was given another "sleeve knee brace[1]" and he received another MRI examination.  The new MRI also revealed two tears in the right knee meniscus.  Plaintiff requested to be examined by an orthopedic doctor for his pain.  However, after talking with medical staff — including "Dr. Chip [and] PA Wicker" — Plaintiff's care level was changed from care level two to care level one and he was transferred to FCI Bennettsville in 2008. (Id.).

At FCI Bennettsville, Plaintiff again requested surgery.  Plaintiff states that the clinic director told Plaintiff that the surgery he requested "is elective surgery for a[] knee injury." (Compl. 12, ECF No. 3).  Plaintiff states that he

---

[1] In the Complaint, Plaintiff states that he "was giving other sleeve knee brace." (Compl. 12, ECF No. 3).  Presumably, this sentence contains typographical errors; therefore, the Court construes this statement as an indication that Plaintiff was given another sleeve knee brace.

started to file a tort claim regarding his knee injury, at which point his care level was changed from one, back to two, and he was transferred back to FCI Jesup in 2008. (Compl. 13, ECF No. 3).

At FCI Jesup, Plaintiff again returned to sick call and to the chronic care clinic to seek treatment for his knee.  He also informed PA Wicker of a new injury to his left wrist.  Plaintiff received an x-ray of his wrist in 2009 which resulted in a diagnosis of "slack wrist." (Compl. 13, ECF No. 3).  PA Wicker issued Plaintiff a left wrist brace and sent Plaintiff to see the orthopedic doctor in December of 2009.  Plaintiff states that the orthopedic doctor ordered surgery on the right knee meniscus.  Plaintiff further states that PA Wicker told him that the paperwork ordering the surgery would follow him to the drug program at FCI Fairton.  Plaintiff indicated that he wanted to have the surgery immediately, before he had to leave FCI Jesup. However, the surgery was not performed, and PA Wicker informed Plaintiff that there was nothing that could be done about the slack left wrist.  Plaintiff asserts that "PA Wicker and the clinic director put elective surgery in Plaintiff['s] medical file[.]" (Compl. 13, ECF No. 3).

After Plaintiff arrived at FCI Fairton in 2010, Plaintiff reported to sick call and requested to have the surgery on his right knee, and sought treatment for his left wrist.  Plaintiff

states that the clinic director, Dr. Morales, told him that FCI
Fairton does not perform knee or wrist surgery because it is
elective. (Id.).  Plaintiff states that, at this time, he also
had carpal tunnel syndrome in his right wrist.  An "EMG" was
ordered on both of Plaintiff's wrists in 2010. (Compl. 14, ECF
No. 3).  Nevertheless, Plaintiff states he filed grievances for
the chronic pain in his right knee and wrist.  In 2011, an EMG
was performed on Plaintiff which confirmed carpal tunnel
syndrome in Plaintiff's right wrist.  Plaintiff states that he
returned to the chronic care clinic and requested to have an MRI
done on his left wrist and right knee.  Instead, Plaintiff
explains that an x-ray was performed because Dr. Morales "[did]
not believe in MRI and [did] not believe in knee surgery."
(Id.).  Plaintiff told Dr. Morales about his chronic pain;
specifically, the pain he was experiencing while sleeping and
walking.  However, Plaintiff did not receive the surgery he
desired.

In conclusion, Plaintiff asserts that the medical
professionals named in his Complaint improperly delayed or
denied surgery on his right knee and denied him medical
treatment on his wrists in violation of his rights under the
Eighth Amendment. (Compl. 14-15, ECF No. 3).  Plaintiff further
implies that he was denied "due process of law under the Fifth

and Fourteenth Amendment[s]" (Compl. 15, ECF No. 3), though he does not elaborate on this claim.

Plaintiff names as Defendants the "clinic directors" at the six Federal Correction Institutions in which he was incarcerated; namely, the Clinical Directors at FCI Manchester, FCI Edgefield, FIC Williamsburg, FCI Jesup, FCI Bennettsville, and FCI Fairton.  He also names PA Wickard, a Public Health Service employee at FCI Jesup, as a defendant.

B. <u>Motion to Dismiss</u>

In their Motion, Defendants assert that, under Federal Rule of Civil Procedure 12(b)(2), this Court lacks personal jurisdiction over the out-of-state clinical director defendants and PA Wickard because these defendants lack the minimum contacts necessary for the Court to exercise personal jurisdiction over them.  Moreover, Defendants contend that under Federal Rule of Civil Procedure 12(b)(1), this Court lacks subject matter jurisdiction over Plaintiff's <u>Bivens</u> claims against PA Wickard because, as a commissioned officer of the United States Public Health Service, he is statutorily immune from all claims for injuries resulting from actions performed within the scope of his employment with the Bureau of Prisons. Accordingly, the out-of-state clinical director defendants and Defendant PA Wickard ask that this Court dismiss the Complaint against them with prejudice.

8

III. <u>ANALYSIS</u>

A. <u>Subject Matter Jurisdiction</u>

Pursuant to the Federal Rule of Civil Procedure 12(b)(1), a claim can be dismissed for "lack of jurisdiction over the subject matter." There are two types of Rule 12(b)(1) motions: one which presents a facial challenge, and one which presents a factual challenge. See <u>Constitution Party of Pennsylvania v. Aichele</u>, 757 F.3d 347, 358 (3d Cir. 2014); <u>Petruska v. Gannon Univ.</u>, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (citing <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977)). A "facial attack" assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction. <u>Mortensen</u>, 549 F.2d at 891. "When considering a facial attack, 'the Court must consider the allegations of the complaint as true,' and in that respect such a Rule 12(b)(1) motion is similar to a Rule 12(b)(6) motion." <u>Petruska</u>, 462 F.3d at 302 n.3 (citing <u>Mortensen</u>, 549 F.2d at 891).

By contrast, when an attack is a factual attack,

there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

<u>Mortensen</u>, 549 F.2d at 891; see also <u>Aichele</u>, 757 F.3d at 358 (explaining differences between a facial and factual attack under Rule 12(b)(1)).

    1. <u>Standard of Review</u>

    The precise form of the challenge under 12(b)(1) is significant because, as set forth above, the standard of review for a facial and factual attack "differs greatly." <u>Mortensen</u>, 549 F.2d at 891.  Here, Defendants assert a factual attack pursuant to FED. R. CIV. P. 12(b)(1). (Mot. 11, ECF No. 39-1).

    The Court notes that Defendants filed the instant motion to dismiss before an Answer was submitted.  Ordinarily, such a procedural posture suggests that the motion pursuant to 12(b)(1) presents a facial attack. See <u>Mortensen</u>, 549 F.2d at 892 n.17 ("A factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted."); <u>see also</u> <u>Kalick v. United States</u>, 35 F. Supp. 3d 639, 644 (D.N.J. 2014) <u>aff'd,</u> 604 F. App'x 108 (3d Cir. 2015) <u>cert. denied,</u> 136 S. Ct. 141, 193 L. Ed. 2d 106 (2015) (citing <u>Cardio-Med. Assoc., Ltd.</u> <u>v. Crozer-Chester Med. Ctr.</u>, 721 F.2d 68, 75 (3d Cir. 1983)) ("A motion to dismiss for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) which is filed prior to answering the complaint is considered a 'facial challenge' to the court's subject matter jurisdiction.").

However, in CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008), as amended (Sept. 29, 2008), the Third Circuit further clarified the application of a 12(b)(1) factual attack and distinguished the facts of the case from those in Mortensen. This Court finds the Third Circuit's holding in CNA to be analogous and persuasive.

In CNA, the Third Circuit addressed a claim under the Federal Tort Claims Act ("FTCA"). Pursuant to § 1346(b)(1) of the FTCA, the government waives sovereign immunity, subject to certain requirements and limitations. In relevant part, the provision grants district courts exclusive jurisdiction over claims against the United States for actions based on the conduct of "any employee of the Government while acting within the scope of his office or employment . . ." 28 U.S.C. § 1346(b)(1) (emphasis added). In CNA, the Government moved for dismissal based, in part, on Rule 12(b)(1) and argued that the district court lacked subject matter jurisdiction because the government employee "was acting outside the scope of his employment, and thus his actions did not fall within § 1346(b)(1)." CNA, 535 F.3d at 138 (emphasis added). The district court dismissed the claims and, on appeal, the Third Circuit held that the district court was correct to analyze the motion — which asserted that the government employee had been

acting outside the scope of his employment — as a factual attack under 12(b)(1).

In doing so, the Third Circuit cautioned that "where jurisdiction is intertwined with the merits of an FTCA claim . . . a district court must take care not to reach the merits of a case when deciding a Rule 12(b)(1) motion." CNA, 535 F.3d at 144 (citing Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000) holding modified by Simon v. United States, 341 F.3d 193 (3d Cir. 2003)).  However, the Third Circuit concluded that "the scope-of-employment issue, and the other conditions of § 1346(b)(1), [were not] questions of merit suitable for disposition under Rule 12(b)(6)" and, instead, should be treated as jurisdictional and analyzed under Rule 12(b)(1). Id. at 144-45.

The instant case presents essentially the inverse situation as that of CNA.  As discussed, infra, whether subject matter jurisdiction exists over the claims against PA Wickard will depend on whether PA Wickard was acting within the scope of his employment as a Public Health Service employee.  For substantially the same reasons as set forth in CNA, this Court determines that "treating the scope-of-employment issue as jurisdictional" in this context is consistent with existing Third Circuit precedent, and the claim will be analyzed as a factual attack pursuant to Fed. R. Civ. P. 12(b)(1). CNA, 535

F.3d at 140.  This Court further notes that other courts in this district have reached this same conclusion, and have specifically construed motions under 12(b)(1) which seek dismissal of Public Health Service employees in <u>Bivens</u> actions as "factual" attacks on subject matter jurisdiction.  <u>See, e.g.,</u> <u>Stevens v. Zickefoose,</u> No. 12-3011, 2015 WL 5227446, at *5 (D.N.J. Sept. 8, 2015); <u>Kimbugwe v. United States</u>, No. 12-7940, 2014 WL 6667959, at *2 (D.N.J. Nov. 24, 2014).

This Court further acknowledges that the jurisdictional issue in this case is, to some extent, "intertwined with the merits" of the case.  Therefore, pursuant to the principles set forth in <u>Mortensen</u> and <u>Gould</u>, this Court notes that "less proof is required of a plaintiff on a Rule 12(b)(1) motion than would be required at trial." <u>CNA</u>, 535 F.3d at 145 (citing <u>Gould</u>, 220 F.3d at 178; <u>Mortensen</u>, 549 F.2d at 892).

2. <u>Analysis</u>

As set forth above, Defendants assert a factual attack pursuant to FED. R. CIV. P. 12(b)(1).  Specifically, Defendants point out that all of Plaintiff's allegations with respect to PA Wickard relate to clinical encounters that took place while Plaintiff was incarcerated at FCI Jesup, where PA Wickard worked as a Public Health Service employee.  Defendants contend that because PA Wickard is an Officer of the United States Public Health Service, he is statutorily immune from suit.  In support

of this contention, Defendants attach the Declaration of PA
Wickard, in which he certifies that he was an employee of the
Public Health Service at all times relevant to the allegations
set forth in the Complaint. (Decl. of Wickard, ECF No. 39-8).

Defendants are correct in their assertion that the Public
Health Service Act ("PHSA") precludes Bivens actions against
individual United States Public Health Service ("PHS") officers
or employees for harms arising out of the performance of medical
or related functions within the scope of their employment. See
42 U.S.C. § 233(a); 28 U.S.C. §§ 1346(b), 2672; Hui v.
Castaneda, 559 U.S. 799, 806, 130 S. Ct. 1845, 1851, 176 L. Ed.
2d 703 (2010) ("Section 233(a) grants absolute immunity to PHS
officers and employees for actions arising out of the
performance of medical or related functions within the scope of
their employment by barring all actions against them for such
conduct.").

Moreover, "proof of scope [of employment] is in most §
233(a) cases established by a declaration affirming that the
defendant was a PHS official during the relevant time period[.]"
Id. at 811; Stevens, 2015 WL 5227446, at *5.  Where a defendant
makes a factual challenge to the Court's jurisdiction under
Federal Rule of Civil Procedure 12(b)(1), the court is not
limited to reviewing the allegations in the complaint, but may
consider and weigh evidence outside the pleadings. See Aichele,

14

757 F.3d at 358 (citing Gould, 220 F.3d at 176); see also Gotha
v. United States, 115 F.3d 176, 179 (3d Cir. 1997) (where
court's power to hear a case is at issue in a factual challenge
to jurisdiction, court may consider matters outside the
pleadings); Mortenson, 549 F.2d at 891 (a Rule 12(b)(1) factual
attack on jurisdiction allows the court to weigh evidence to
satisfy its jurisdiction; there is no presumptive truthfulness
to a plaintiff's allegations).  Plaintiff has the burden of
proof that jurisdiction exists. Mortenson, 549 F.2d at 891.

Defendants have properly submitted PA Wickard's Declaration
in support of their Rule 12(b)(1) motion to dismiss him as a
defendant under the PHSA.  Plaintiff has failed to offer any
factual allegations which show that PA Wickard's conduct
occurred outside of the scope of his employment as a PHS
officer.  Thus, even applying "the 'less in the way of
jurisdictional proof' standard" applicable to Rule 12(b)(1)
motions, see CNA, 535 F.3d at 145 (citations omitted), Plaintiff
has failed to meet his burden of establishing subject matter
jurisdiction.  Accordingly, Defendant's Motion to Dismiss will
be granted in this respect and Plaintiff's Bivens claims against
PA Wickard will be dismissed with prejudice.

B. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides for
dismissal for lack of personal jurisdiction.  When a defendant

15

challenges a court's personal jurisdiction, the plaintiff has
the burden of demonstrating that personal jurisdiction exists,
through "sworn affidavits or other competent evidence." Abel v.
Kirbaran, 267 Fed. Appx. 106, 108 (3d Cir. 2008) (citing Mellon
Bank (E.) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d
Cir. 1992)).  "However, when the factual record contains only
pleadings and affidavits, this burden involves merely
establishing a prima facie case that personal jurisdiction
exists over the defendant.  Further, for purposes of deciding
the motion, the Court accepts as true the factual allegations
stated within the complaint." Raines v. Lappin, No. 11-5681,
2013 WL 2301784, at *1 (D.N.J. May 24, 2013) (citing Dayhoff
Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 2008)
(discussing Rule 12(b)(2)) (other citations omitted); see also
Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir.
2004) (holding that when a court does not hold an evidentiary
hearing on the motion, a plaintiff's allegations will be treated
as if they were true) (cited in Abuhouran v. Fletcher Allen
Healthcare, No. 07-05108, 2009 WL 1834316, at *4 (D.N.J. June
25, 2009)).

"The federal district courts in New Jersey may assert
personal jurisdiction over a nonresident only to the extent
authorized by state law." Boyd v. Arizona, 469 F. App'x 92, 97
(3d Cir. 2012) (citing Eurofins Pharma US Holdings v.

BioAlliance Pharma SA, 623 F.3d 147, 155 (3d Cir. 2010)); see
also FED. R. CIV. P. 4(e), 4(k)(1)(A).  The New Jersey statute is
"intended to extend as far as is constitutionally permissible."
DeJames v. Magnificence Carriers, Inc., 654 F.2d 280 (3d Cir.
1981); see also Miller Yacht Sales, 384 F.3d at 96 (citation
omitted)("New Jersey's long-arm statute provides for
jurisdiction coextensive with the due process requirements of
the United States Constitution.").  Accordingly, the exercise of
personal jurisdiction over a nonresident defendant depends upon
whether that defendant has established "certain minimum contacts
with [the forum state] such that the maintenance of the suit
does not offend traditional notions of fair play and substantial
justice." Telcordia Tech Inc. v. Telkom SA Ltd., 458 F.3d 172,
177 (3d Cir. 2006) (quoting Int'l Shoe Co. v. Washington, 326
U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); Miller Yacht
Sales, 384 F.3d at 96 (citation omitted) ("[P]arties who have
constitutionally sufficient 'minimum contacts' with New Jersey
are subject to suit there.")

There are two types of personal jurisdiction that can be
established by minimum contacts which comport with
constitutional due process principles: general jurisdiction and
specific jurisdiction. See Boyd, 469 F. App'x at 97.  General
jurisdiction exists "when a defendant has maintained systematic
and continuous contacts with the forum state." Id. (quoting Kehm

17

Oil Co., v. Texaco, Inc., 537 F.3d 290, 300 (3d Cir. 2008)).

"Specific jurisdiction exists when the claim arises from or

relates to conduct purposely directed at the forum state."

Kehm Oil Co., 537 F.3d at 300 (3d Cir. 2008) (citing

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408,

414-15, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984)).

In this case, Plaintiff alleges that his constitutional

rights were violated by the "clinic directors" at various

federal correctional institutions outside of the state of New

Jersey and by PA Wickard at FCI Jesup in Georgia.  Specifically,

Plaintiff names as defendants the Clinical Directors at FCI

Manchester in Kentucky, FCI Edgefield in South Carolina, FCI

Williamsburg, FCI Jesup in Georgia, and FCI Bennettsville in

South Carolina, and PA Wickard at FCI Jesup in Georgia

(collectively, the "Out-of-State Defendants").  Plaintiff's

allegations regarding the Out-of-State Defendants all relate to

conduct which occurred outside of the territorial jurisdiction

of the United States District Court for the District of New

Jersey.  Plaintiff does not allege that the Out-of-State

Defendants provided any treatment, or failed to provide

treatment, in New Jersey or that these Defendants directed their

conduct at New Jersey.  Accordingly, Plaintiff has failed to

allege that minimum contacts existed to establish specific

jurisdiction as to the Out-of-State Defendants. See Kehm Oil Co., 537 F.3d at 300.

Moreover, Plaintiff has not asserted any facts which suggest that any of the Out-of-State Defendants maintained the sort of "systematic and continuous contacts" with New Jersey that would establish general jurisdiction. To the contrary, the Out-of-State Defendants certify that during the time period in question none of them "lived in New Jersey, worked in New Jersey, or owned any real property in New Jersey." (Def.s' Br. 9, ECF No. 39-1); see also (Decl. of Luis Berrios, M.D., Clinical Director at FCI Bennettsville, ECF No. 39-3); (Decl. of Peter Librero, M.D., Clinical Director at FCI Jesup, ECF No. 39-4); (Decl. of Victor Loranth, M.D., Clinical Director at FCI Williamsburg, ECF No. 39-5); (Decl. of Rex Blocker, M.D., Clinical Director at FCI Edgefield, ECF No. 39-7); (Decl. of PA Wickard, ECF No. 39-8); (Decl. of John Gonzalez-Clanton, M.D., Clinical Director at FCI Manchester, ECF No. 40-1); (Decl. of Jose A. Serrano, M.D., Clinical Director at FCI Edgefield, ECF No. 40-2). Therefore, there is nothing in the Complaint which suggests that this Court could exercise general jurisdiction over the Out-of-State Defendants.

For these reasons, this Court determines that personal jurisdiction does not exist as to the Out-of-State Defendants. See, e.g., Cardona v. Bledsoe, 596 F. App'x 64, 66 (3d Cir.

19

2015) (holding that the district court properly dismissed the out-of-state BOP officials for lack of personal jurisdiction); Bailey-El v. Fed. Bureau of Prisons, 246 F. App'x 105 (3d Cir. 2007) (affirming district court's dismissal of claims against out-of-state federal prison officers for lack of personal jurisdiction); Raines, No. 11-5681, 2013 WL 2301784, at *2 (dismissing claims against federal corrections employees at out-of-state institutions for lack of personal jurisdiction); Orozco-Barajas v. Zickefoose, No. 11-3628, 2012 WL 1435556, at *5 (D.N.J. Apr. 24, 2012) (same).

C. Transfer

Pursuant to 28 U.S.C. § 1406(a), a district court is permitted to either dismiss or transfer a case to another court even if it does not have jurisdiction. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67 (1962) (establishing that the language of § 1406 is broad enough to authorize the transfer of cases where the plaintiff has filed in a court that does not have jurisdiction over the defendant); Lafferty v. St. Riel, 495 F.3d 72, 77-78 (3d Cir. 2007) (stating that § 1406(a) comes into play when plaintiffs have filed in an improper forum and

district courts are required to either dismiss or transfer the
case) (citing Goldlawr, 369 U.S. at 465-66). [2]

Section 1406(a) provides in pertinent part:

> The district court of a district in which is filed a
> case laying venue in the wrong division or district
> shall dismiss, or if it be in the interest of justice,
> transfer such case to any district or division in
> which it could have been brought.

28 U.S.C. § 1406(a).

In light of the lack of personal jurisdiction, discussed
above, this Court determines that venue in this district is

---

[2]    This Court notes that some courts also use 28 U.S.C. § 1631
as a source for effecting a transfer.  In relevant part, this
statute provides that, when a district court finds that there is
a "want of jurisdiction,"

> the court shall, if it is in the interest of justice,
> transfer such action or appeal to any other such court
> in which the action or appeal could have been brought
> at the time it was filed or noticed, and the action or
> appeal shall proceed as if it had been filed in or
> noticed for the court to which it is transferred on
> the date upon which it was actually filed in or
> noticed for the court from which it is transferred.

28 U.S.C. § 1631.

However, because courts are divided as to whether this
section permits transfer to cure a lack of personal
jurisdiction, this Court determines that the appropriate statue
for effectuating a possible transfer in this case — where
personal jurisdiction has been found to be lacking — is §
1406(a). See 15 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE
§ 3842 (4th ed. 2015) ("Although the courts are rather evenly
divided on the subject, the better view is that Section 1631 is
limited to subject matter jurisdiction defects and does not
address problems with personal jurisdiction or venue.").

improper as to the Out-of-State Defendants.  However, personal jurisdiction does exist, and venue is proper in this district, as to the remaining defendant: the Clinical Director at FCI Fairton, which is located in New Jersey.  Moreover, Defendants have not challenged the claims against the Clinical Director at FCI Fairton in the instant motion.

In a situation where venue is proper for one defendant but not for others and dismissal is appropriate, a district court has the option to dismiss; or to sever claims, retaining jurisdiction over some defendants and transferring the case as to the other defendants to an appropriate district. See Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291 (3d Cir. 1994); 15 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3827 (4th ed. 2015) ("If venue is proper for some defendants but improper for others, the district court has wide discretion.  It may transfer the entire case to another forum that would be proper for all the defendants.  Or it may retain the case as to those defendants who have been properly sued there and sever and transfer the portion of the case for those defendants for whom venue is improper or dismiss the action as to those defendants.").

Here, Plaintiff has filed claims against the Out-of-State Defendants for alleged violations which occurred at FCI Manchester in Kentucky, FCI Jesup in Georgia, and the Federal

22

Correctional Institutions at Edgefield, Williamsburg, and Bennettsville in South Carolina.  It appears that this action was filed in good faith and Defendants do not argue otherwise. Indeed, the record suggests that Plaintiff may have been confused about where to file his case.  Therefore, this Court determines that it would be in the interest of justice to sever and transfer the claims against the Out-of-State Defendants.

The Court notes that given the dates that Plaintiff's claims against the Out-of-State Defendants accrued, the date of the Complaint, and the applicable statute of limitations for Bivens claims in each state in which venue is proper, it appears that the instant Complaint, which is dated May 16, 2012, was filed beyond the applicable statute of limitations.[3]

---

[3]   Plaintiff's claims against the Clinical Director at the Federal Correctional Institution located in Manchester, Kentucky stem from treatment received in 2002.  These claims would be properly filed before the United States District Court for the Eastern District of Kentucky, which applies a one-year statute of limitations for claims under Bivens.  See Clay v. United States, No. 05-CV-599, 2006 WL 2711750, at *13 (E.D. Ky. Sept. 21, 2006) (citing Mitchell v. Chapman, 343 F.3d 811, 825 (6th Cir. 2003) and McSurely v. Hutchison, 823 F.2d 1002 (6th Cir. 1987)) ("Constitutional claims asserted under Bivens claims have a one-year statute of limitations under Kentucky law.").

Likewise, the timeline of events provided in the Complaint and the admission and release history provided by Defendants, indicate that Plaintiff was incarcerated at FCI Edgefield from February 21, 2003 to May 19, 2005; he was incarcerated at FCI Williamsburg from May 19, 2005 to March 29, 2007; and he was incarcerated at FCI Bennettsville from May 20, 2008 to November 14, 2008.  See (Compl. 11-13, ECF No. 3); (Def.s' Br. 3 n.3, ECF No. 39-1); (Decl. of Elizabeth Pascal 4-7, Ex. A, ECF No. 39-2). All three of these institutions are located in South Carolina,

Nevertheless, this Court makes no finding as to timeliness and remains convinced that transfer is in the interest of justice. Specifically, the Court notes that Plaintiff — through no apparent fault of his own — was transferred multiple times, and each time began anew the process of seeking medical care and filing grievances.  In light of Plaintiff's transfers and zealous pursuit of the prison grievance procedure to resolve his continuing medical needs, this Court determines that it is in the interest of justice to transfer the severed claims to their respective, proper venues so that each district court may consider the issue of equitable tolling and timeliness.

IV.  SERVICE OF DEFENDANT MORALES

which applies a three-year statute of limitations for claims under <u>Bivens</u>. <u>See</u> <u>Nat'l Adver. Co. v. City of Raleigh</u>, 947 F.2d 1158, 1162 (4th Cir. 1991) (holding that the South Carolina statute of limitations most analogous to a <u>Bivens</u> action is the three year statute of limitations governing personal injury actions).

   Finally, Plaintiff was incarcerated at FCI Jesup in Georgia from April 13, 2007 to May 20, 2008; and again from December 11, 2008 to January 15, 2010. <u>See</u> (Compl. 11-13, ECF No. 3); (Def.s' Br. 3 n.3, ECF No. 39-1); (Decl. of Elizabeth Pascal 4-7, Ex. A, ECF No. 39-2).  Therefore, the latest date on which Plaintiff's claims for delay or denial of adequate medical treatment as to this defendant could have accrued was January 15, 2010, Plaintiff's last day of incarceration at FCI Jesup.  In Georgia, the statute of limitations for claims under <u>Bivens</u> is two years. <u>See</u> <u>Bloodworth v. United States</u>, No. 14-12292, 2015 WL 4734473, at *2 (11th Cir. Aug. 11, 2015) (citing <u>Kelly v. Serna</u>, 87 F.3d 1235, 1238 (11th Cir. 1996)) ("For <u>Bivens</u> actions brought in Georgia, the statute of limitations is two years.").

As set forth above, this Court has jurisdiction over
Plaintiff's claims against Defendant Morales, the Clinical
Director at FCI Fairton.  However, as counsel for Defendants
points out in letters dated March 7, 2014 and July 30, 2014 (ECF
No. 19, 24), Defendant Morales has not been properly served.

Pursuant to Federal Rule of Civil Procedure 4(i)(3), a
plaintiff suing a federal employee in his individual capacity,
in addition to serving the individual defendant, must also serve
the United States.  Service upon the United States is
accomplished by delivering a copy of the summons and the
complaint by certified mail to: (1) the United States attorney,
or the civil-process clerk at the United States Attorney's
Office, for the district in which the action was brought; and
(2) the Attorney General of the United States in Washington,
D.C. See FED. R. CIV. P. 4(i)(1); Mathies v. Silver, 450 F. App'x
219, 221 (3d Cir. 2011).  In this case, neither Defendant
Morales nor the United States has been properly served.  Indeed,
Plaintiff has expressed confusion as to how to effectuate
service. See (ECF No. 15).  Here, the United States Attorney's
Office has been served with summons twice, and Defendant Morales
has indicated that he is willing to accept a Waiver of Service
pursuant to Rule 4(d). (ECF No. 19).  Nevertheless, service upon
the United States is not complete until, as discussed above, a
copy of the summons and complaint is delivered to the Attorney

General of the United States in Washington, D.C. See Fed. R. Civ. P. 4(i)(1).

Accordingly, the Court will direct the Clerk to issue summons, and the United States Marshal shall serve summons and copies of the Complaint, and all prior Opinions and Orders entered in this matter, on the Attorney General of the United States in Washington, D.C., with all costs of service advanced by the United States.

## V.   MOTION FOR PRO BONO COUNSEL

Plaintiff has filed a motion to appoint pro bono counsel. (ECF No. 42).  In it, he explains that he is "unable to gather all the information related to [his] medical condition; [he is] unable to [depose] the four doctors that have been involved in [his] treatment and care; and [he is] untrained in the law and the complexity of the legal hurdles [he] face[s]." (Mot. 3, ECF No. 42).

As Plaintiff notes, he previously filed a motion seeking the appointment of pro bono counsel. (ECF No. 33).  The Court denied his motion on August 24, 2015. (ECF No. 35).  In the instant motion, Plaintiff does not present any new arguments and his instant motion is essentially a reiteration of his previous request for counsel.  Moreover, Plaintiff's case is in substantially the same procedural posture as it was when his previous motion was denied.  Therefore, for the same reasons set

forth in this Court's August 24, 2015 Opinion (ECF No. 34),
Plaintiff's motion to appoint pro bono counsel (ECF No. 42) is
again DENIED without prejudice.  The Court notes that Plaintiff
may renew his application for the appointment of pro bono
counsel should the circumstances of this case change such that
the factors set forth in Parham v. Johnson, 126 F.3d 454, 457
(3d Cir. 1997), and Tabron v. Grace, 6 F.3d 147, 155 (3d Cir.
1993), weigh in favor of appointment.

## VI.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss
will be GRANTED in part and DENIED in part.  The claims against
PA Wickard will be dismissed with prejudice pursuant to FED. R.
CIV. P. 12(b)(1).  In the interest of justice, the claims against
the Clinical Directors at FCI Manchester in Kentucky; FCI Jesup
in Georgia; and FCI Edgefield, FCI Williamsburg, and FCI
Bennettsville in South Carolina will be severed and transferred
to the district courts in the Eastern District of Kentucky,
Southern District of Georgia, or District of South Carolina;
respectively.  Plaintiff's claims against the Clinical Director
at FCI Fairton, Dr. Morales, will proceed before this Court at
this time and the Clerk shall issue summons, and the United
States Marshal shall serve summons and copies of the Complaint,
and all prior Opinions and Orders entered in this matter, on the
Attorney General of the United States in Washington, D.C., with

all costs of service advanced by the United States.  Finally,

Plaintiff's motion for pro bono counsel (ECF No. 42) is DENIED

without prejudice.

     An appropriate Order will follow.




                     ___s/ Noel L. Hillman_____
                     NOEL L. HILLMAN
                     United States District Judge


Dated: March 28, 2016
At Camden, New Jersey